UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                  Plaintiff/Respondent,<br><br>v.<br><br><br>WILLIAM F. MCCRAY,<br><br>                                  Defendant/Petitioner. | CIVIL CASE NO.  09cv0614 MMA<br>CRIM CASE NO.   00cr2580 MMA<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR LEAVE TO FILE SUPPLEMENT OF AUTHORITY;**<br><br>[Doc. No. 453]<br><br>**(2) GRANTING MOTION FOR LEAVE TO FILE CORRECTED SUPPLEMENT;**<br><br>[Doc. No. 455]<br><br>**(3) DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 434] |

Before this Court is Petitioner William F. McCray, Jr.'s Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255.  The Court has considered the motion; Respondent's opposition and supplemental response; Petitioner's reply and corrected supplemental authority; and all additional supporting documents submitted by the parties.  For the following reasons, the Court **DENIES** McCray's motion and dismisses the case with prejudice.

/ / /

**PROCEDURAL BACKGROUND**

On August 20, 2000, a grand jury indicted Petitioner on multiple counts of mail fraud, wire fraud, perjury, money laundering, conspiracy, and filing false tax returns. [Doc. No. 1.] A jury convicted Petitioner on all counts on November 14, 2003. [Doc. No. 273.] On August 29, 2005, the Court sentenced Petitioner to 211 months in custody, a 3-year term of supervised release, and payment of restitution in the amount of $12,228,170.12.[1] In apportioning the sentence, the Court imposed 211 months on Counts 23-24; 120 months on Counts 25-27; 60 months on Counts 2-5, 7-11, 13-22, 28; and 36 months on Counts 29 and 31. The Court ordered all counts to be served concurrent with one another and with the sentence Petitioner was already serving in criminal case No. 02CR0332-L.[2] [Doc. No. 374.]

Petitioner appealed. [Doc. No. 377.] On November 21, 2007, the Ninth Circuit affirmed Petitioner's conviction and sentence. (Resp't P. & A. (RPA), Ex. 4.) On February 4, 2008, the Ninth Circuit denied Petitioner's Petition for Rehearing. [Doc. No. 404.] Petitioner appealed to the United States Supreme Court, which denied his Petition for Writ of Certiorari on March 24, 2008. (Pet. 4.)

On March 23, 2009, Petitioner moved the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. No. 434.] Petitioner filed a Supplement to his Petition on June 5, 2009. [Doc. No. 436.] Respondent filed a Response in Opposition on August 19, 2009. [Doc. No. 441.] On October 6, 2009, Petitioner filed a Reply. [Doc. No. 446.] On November 5, 2009, Respondent filed a Supplemental Memorandum in Response and Opposition, in order to discuss the applicability of the Ninth Circuit's decision in *United States v. Van Alstyne*, 584 F.3d 803 (9th Cir. 2009). [Doc. No. 447.] Thereafter, Petitioner filed a Motion for Leave to File a Supplement of Authority [Doc. No. 453] and a Motion for Leave to File a Corrected Supplement [Doc. No. 455].

---

[1] The Honorable Napoleon A. Jones, Jr. (deceased) presiding.

[2] On March 3, 2003, Petitioner was convicted of thirteen counts of mail and wire fraud in connection with his operation of a company called Fundamental Analysis Trading. The jury found that Petitioner committed those crimes while on pretrial release in this case, wherein his criminal activity stemmed from his operation of a company called International Forex Limited. On June 6, 2003, the Honorable M. James Lorenz sentenced Petitioner to a term of 60 months on Count 1; 60 months on Counts 2-12, to run consecutive to Count 1; and 17 months on Count 13, to run consecutive to Counts 1-12.

1  The Court now **GRANTS** these motions and will consider Petitioner's Supplement and Corrected
2  Supplement.

### LEGAL STANDARD

A sentencing court is authorized to "vacate, set aside or correct the sentence" of a federal prisoner if it concludes that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Claims for relief under § 2255 must be based on constitutional error, jurisdictional defect, or an error resulting in a "complete miscarriage of justice" or "inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979). Additionally, the scope of collateral attack is much more limited than on direct appeal. *United States v. Addonizio*, 442 U.S. 178, 184-85 (1979). Further, if a petitioner has procedurally defaulted by not raising a claim on direct review, he will be barred from raising it on collateral review unless he can meet one of the exceptions excusing procedural default, such as cause and prejudice or a fundamental miscarriage of justice. *See Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

If the record clearly indicates that a petitioner does not have a claim or that a petitioner has asserted "no more than allegations unsupported by the facts or refuted by the record," a district court can deny a § 2255 motion without holding an evidentiary hearing. *See United States v. Quan*, 789 F.2d 711 (715 (9th Cir. 1986).

### DISCUSSION

Petitioner argues the Supreme Court's plurality decision in *United States v. Santos*, 128 S. Ct. 2020 (2008), requires the Court to vacate his conviction and sentence on Counts 23-27. (Pet. 10.) In *Santos*, a divided Court examined the definition of "proceeds" under the federal money laundering statute, 18 U.S.C. § 1956, ultimately vacating Santos' money laundering convictions because they did not involve profits of the enterprise. 128 S. Ct. at 2031. Petitioner argues that the funds involved in his money laundering transactions were not "profits" of his fraud scheme, as required by *Santos*, and thus do not support his money laundering convictions. (Pet. 3.)

A.   *Procedural Bar*

Respondent argues that Petitioner has procedurally defaulted his claims by not raising them

earlier. (RPA 12.) Petitioner did not previously raise this claim regarding "profits" with respect to his money laundering convictions either before this Court or on appeal to the Ninth Circuit or the U.S. Supreme Court. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted).

In his Reply, Petitioner claims he is not procedurally barred from raising the claims based on the Supreme Court's ruling in *Santos*. (Pet. Reply 2.) He admits that he did not use the word "profit" specifically in his direct appeal, but rather it was inferred. *Id.* However, to meet the *Bousley* standard, Petitioner must actually raise, not just allude to, the claim on direct review. *See Bousley*, 523 U.S. at 622. Thus, Petitioner is procedurally barred from raising his claims unless he can show either cause and prejudice or actual innocence. *See id.*

1. Cause and Prejudice

The same cause and prejudice standard applies to federal and state prisoners. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982). A court may address the merits of a procedurally barred claim if the petitioner shows cause and prejudice as a result of the alleged federal law violations. *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). "In procedural default cases, the cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Although not an exhaustive list, "cause" includes a showing of the unavailability of a claim's factual or legal basis to counsel, interference by state officials, or constitutionally ineffective assistance of counsel. *Murray*, 477 U.S. at 488.

Petitioner has not made the requisite causal showing. Prior to the current motion, Petitioner had not raised the issue that "proceeds" means "profits" in either the district or appellate courts. The Supreme Court has held that a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default. *Reed v. Ross*, 468 U.S. 1, 16 (1984). The Ninth Circuit has given examples of what claims might be considered novel: "overruled precedents, overturned almost unanimous lower court authority, or disapproved

- 4 -                                                                                                  09cv614/00cr2580

previously sanctioned practices." *Tran v. Maass*, 990 F.2d 1260 (9th Cir. 1993). Here, as the Government points out, although the Supreme Court did not decide *Santos* until after Petitioner's direct appeal, the ambiguity of the word "proceeds" in a § 1956 action was raised in several previous cases.[3] Other courts in the Ninth Circuit have held that the legal basis of a *Santos*-like claim was available to defendants prior to the *Santos* decision, and thus does not qualify as a novel claim in order to provide cause for a procedural default. *See, e.g.*, *Santana v. United States*, 2009 WL 1228556 at *5 (W.D. Wash. 2009) ("At the time of Mr. Santana's appeal in 2007, it was neither novel nor futile to have argued that the money-laundering statute demanded that the term 'proceeds' be equated with 'profits.'"); *Johal v. United States*, 2009 WL 210709 at *9 (W.D. Wash. 2009) ("The *Santos* claim was available to petitioner well before he was sentenced on September 29, 2006."); *United States v. Close*, 2009 WL 2600091 at *6 (D. Idaho 2009). Petitioner has not explained what prevented him from raising the issue earlier, and therefore he cannot show the necessary cause to excuse his procedural default. Therefore, this Court can only reach the merits of the procedurally barred claim if Petitioner can show a fundamental miscarriage of justice.

2. <u>Fundamental Miscarriage of Justice</u>

The Supreme Court has opined that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Additionally, "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The petitioner thus is required to make a stronger showing than that needed to establish prejudice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

---

[3] The Government references *United States v. Scialabba*, 282 F.3d 475, 477-78 (7th Cir. 2002), where a court determined the word "proceeds" in a § 1956 case means "net income" rather than "gross income." The Government notes the case was discussed or at least cited in 22 different cases on Westlaw before November 1, 2007, which was one week before Petitioner's oral argument in his direct appeal. (*See* RPA 13, n.8.)

Here, Petitioner cannot show a fundamental miscarriage of justice occurred because he has not presented any new evidence that shows he is actually innocent of money laundering. Rather, his Petition and Reply ask the Court to extend the *Santos* plurality holding of the Supreme Court and find that "proceeds" is defined as "profits" with respect to his case, and that his money laundering convictions did not involve "profits." As discussed in the following section, the Court does not so find. Thus, no fundamental miscarriage of justice exists.

Because the Court **FINDS** that Petitioner has not shown the necessary cause and prejudice nor a fundamental miscarriage of justice, Petitioner's claim based on *Santos* is procedurally barred.

*B.     The Merits of Petitioner's Position*

Although the Court has found that Petitioner's claim is procedurally barred, the Court will nonetheless examine the merits of Petitioner's claim. The Court **FINDS** that even if Petitioner's claim were not procedurally defaulted, his claim would still fail on the merits.

Petitioner asks the Court to vacate the conviction and sentence imposed on Counts 23-27 in light of the recent Supreme Court decision in *United States v. Santos*, 128 S. Ct. 2020 (2008). Specifically, he argues that the Supreme Court announced a new interpretation of the term "proceeds" in 18 U.S.C. §§ 1956 and 1957, such that the word means "profits" and not "receipts," and this new interpretation undermines his conviction. (Pet. Supplement 1.)

1.     The *Santos* Decision

In *Santos*, an illegal gambling case, the Supreme Court considered whether the term "proceeds" in § 1956, the federal money-laundering statute, means "profits" or "receipts." 128 S. Ct. at 2022. Section 1956 punishes "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(I). In a decision joined by four justices, the plurality invoked the rule of lenity, determining that the ambiguous statute must be construed in the light most favorable to the defendant. *Id.* at 2025. Thus, the plurality concluded the term "proceeds" in all money-laundering statutes means "profits." *Id.* at 2030-31. Four justices dissented, determining that "proceeds"

means "receipts." *Id.* at 2044 (Alito, J., dissenting). Justice Stevens concurred in the judgment vacating the conviction, determining that the term "proceeds" could have different meanings in varying contexts when used to reference distinct types of illegal criminal activities. *Id.* at 2032 (Stevens, J., concurring). For example, Justice Stevens opined that, in gambling cases, the term "proceeds" means "profits," but in drug trafficking cases or other cases not involving a merger problem,[4] the term "proceeds" means "receipts." *Id.* at 2031-31, n.7 (Stevens, J., concurring). The Court vacated Santos' conviction for money laundering, where the underlying unlawful activity was operating an illegal gambling ring. *Santos*, 128 U.S. at 2031. The Court held that Santos' payments to lottery winners and employees did not involve the lottery's profits. *Id.*

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" *Marks v. United States*, 430 U.S. 188, 193 (1977) (citation omitted). Thus, under *Marks*, Justice Stevens's concurrence is the holding since it is the narrowest position of the Justices who concurred in the judgment.

2.     The *Van Alstyne* Decision

The Ninth Circuit recently examined *Santos* and its effect on money laundering convictions in *United States v. Van Alstyne*, 584 F.3d 803 (9th Cir. 2009). The panel noted that *Santos* undermined the Ninth Circuit's previous approach that gross receipts from a specified illegal activity always satisfied the "proceeds" prong of § 1956. *Id.* at 813. The panel further discerned that "[o]nly the desire to avoid a 'merger problem' united the five justices who held that Santos' payments to winners and runners did not constitute money laundering." *Id.* at 814. Therefore, the panel identified "the holding that commanded five votes in *Santos* as being that 'proceeds' means 'profits' where viewing 'proceeds' as 'receipts' would present a 'merger' problem of the kind that troubled the plurality and concurrence in *Santos*." *Id.*

---

[4] Justice Stevens addresses the merger problem by suggesting that "proceeds" means "profits" only where the transaction is so essential to the commission of the underlying crime that the money laundering transaction may fairly be said to merge with the underlying crime and not constitute a new and separate offense. *Id.* at 2027.

The Ninth Circuit, evaluating Van Alstyne's sentence on direct review in light of this understanding of *Santos*, reversed Van Alstyne's convictions on two of three money laundering counts.[5] *Id.* at 807. The underlying illegal activity in Van Alstyne's case was mail fraud, arising from his operation of a Ponzi scheme based around oil and gas limited partnerships. *Id.* The transactions that gave rise to the money laundering charges involved transfers of funds for the purpose of making distribution payments to individual investors and refunding the entire outlay made by one investor. *Id.* at 809. The Ninth Circuit held that the distribution payment transactions presented the merger problem identified as problematic by the Supreme Court in *Santos*. *Id.* at 814-15. This was because "[t]he very nature of the scheme . . . required some payments to investors for it to be at all successful." *Id.* at 815. Therefore, the Ninth Circuit reversed Van Alstyne's money laundering conviction as it related to the two counts involving distribution payments to investors. *Id.* at 816. However, the Ninth Circuit affirmed Van Alstyne's conviction on the third count of money laundering, which involved a refund of one investor's outlay. The Court of Appeals held, "Returning the entire amount of the Easleys' investment to them undermined rather than advanced the core scheme, as the funds returned to them would not be available to lull other investors into maintaining their investment." *Id.* at 815-16. The Ninth Circuit also noted, "We recognize that not all mail fraud schemes will involve payments that could implicate the 'merger' problem." *Id.* at 815.

3. Effect of *Santos* and *Van Alstyne* on Petitioner's Convictions

The underlying criminal activity in Petitioner's money laundering convictions was mail fraud and wire fraud. Applying the Ninth Circuit's interpretation of *Santos* to Petitioner's case, "proceeds" must mean "profits" under the money laundering statutes if the transactions that gave rise to Petitioner's money laundering convictions were a "central component of the 'scheme to defraud.'" *See Van Alstyne*, 584 F.3d at 815.

Petitioner was convicted of money laundering in Counts 23 through 27. Specifically,

---

[5] The Court notes that, because the Ninth Circuit examined Van Alstyne's money laundering conviction on direct review, its decision is not instructive on the issue of whether *Santos*-like claims are available to petitioners, such as McCray, raising them for the first time on collateral review, through habeas petitions brought pursuant to 28 U.S.C. § 2255.

Counts 23 and 24 charged Petitioner with promotional money laundering pursuant to 18 U.S.C. § 1956(a)(1)(A)(I), and Counts 25 through 27 charged Petitioner with engaging in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1957.  Count 23 involved Petitioner's February 19, 1999 wire transfer of $4 million of fraudulently-obtained investor funds from his company International Forex, Ltd., Inc.'s ("IFL") Sentinel Management account at Bank of New York to IFL's offshore bank account at the Bank of Bermuda.  Count 24 involved Petitioner's February 19, 1999 wire transfer of $1.8 million of fraudulently-obtained investor funds from IFL's Union Bank of California account to IFL's same Bank of Bermuda account.  Count 25 involved Petitioner's February 23, 1998 use of IFL-paid personal commissions to purchase his La Jolla residence.  Counts 26 and 27 involved Petitioner's May 1998 use of IFL-paid personal commissions to purchase his Porsche automobile.  [Doc. No. 1.]

Petitioner's transactions were not a central component of his scheme to defraud. Counts 23 and 24 involved wire transfers of large sums from IFL bank accounts in the U.S. to an offshore bank account in Bermuda.  At trial, IRS Agent Wright testified that Petitioner used these funds to trade foreign currency, pay a refund to an investor, pay himself a commission, return funds to IFL domestic bank accounts, pay bank fees, and engage in some unidentified wire transfers.  (Resp't Opp'n, Ex. 2.)  As the Ninth Circuit held in *Van Alstyne*, refunds to investors do not advance the core scheme to defraud.  *Van Alstyne*, 584 F.3d at 815-16.  Nor does Petitioner's payment of commissions to himself constitute a central component of the scheme to defraud.  *See, e.g.*, *United States v. Shelburne*, 563 F. Supp. 2d 601 (W.D. Va. 2008); *Gotti v. United States*, 2009 WL 197132 (E.D.N.Y. 2009).  In addition, Petitioner's use of the funds to expand his foreign currency trading scheme offshore does not implicate a merger problem because it was not essential to the continuing success of his scheme. These transactions represent the use of receipts of a crime to promote new crimes.  Such expansion and the commission of new crimes are not central components of the underlying scheme to defraud.  *See Santana v. United States*, 2009 WL 1228556 at *5 (W.D. Wash 2009) (finding no merger problem where defendant used methamphetamine proceeds to start marijuana-growing business); *see also Santos*, 128 S. Ct. at 2026 (explaining that interpreting "proceeds" as "profits" respects a Congressional determination

that "the risk of leveraging one criminal activity into the next poses a greater threat to society than the mere payment of crime-related expenses and justifies the money-laundering statute's harsh penalties").

Petitioner's conviction pursuant to 18 U.S.C. § 1957 for using IFL commissions to purchase a condominium and a luxury car, as charged in Counts 25-27, is likewise unaffected by the decisions in *Santos* and *Van Alstyne*. Petitioner's purchase of luxury items for himself was clearly not a critical part of the scheme's ongoing existence and thus does not pose a merger problem.

The Court **FINDS** that the transactions underlying Petitioner's money laundering convictions were not a "central component of the scheme to defraud." Therefore, Petitioner's claim is without merit.[6]

C.   *Evidentiary Hearing*

In reviewing a § 2255 motion, a federal court shall hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Here, Petitioner is not entitled to an evidentiary hearing because his motion turns on the purely legal question of whether the Court defines "proceeds" of mail and wire fraud as "receipts," or, in light of the Supreme Court's plurality decision in *Santos*, whether the Court defines the term as "profits." Because the record in the present case is sufficiently developed to conclusively show that Petitioner is not entitled to relief, the Court may dismiss his claim without a hearing. *See Shah v. United States*, 878 F.2d 1156, 1168 (9th Cir. 1980).

/ / /

/ / /

---

[6] Petitioner has submitted an additional Supplement of Authority, in which he argues that the Ninth Circuit's recent decision in *United States v. Moreland*, 604 F.3d 1058 (9th Cir. 2010), requires reversal of his conviction. [Doc. No. 465.] In that case, the Ninth Circuit reviewed Moreland's convictions for mail fraud, wire fraud, money laundering, and conspiracy on direct appeal. With respect to Moreland's money laundering convictions, the Ninth Circuit held that the jury instructions at trial constituted plain error because they did not define proceeds as profits for transactions that raised "the merger problem condemned in *Santos* and *Van Alstyne*." 604 F.3d at 1077-78. However, the *Moreland* decision relied on the *Van Alstyne* interpretation of *Santos*; as such, it does not change the Court's analysis of Petitioner's claims above.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Petitioner's Motion to Vacate, Set Aside, or Correct Sentence in its entirety and dismisses the case with prejudice.

**IT IS SO ORDERED.**

DATED: August 11, 2010

Hon. Michael M. Anello
United States District Judge